UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA WELLS | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | 08 CV 50241 |
| | ) | |
| AFFILIATED COMPUTER SERVICES, INC., | ) ) | |
| | ) | |
| DEFENDANT | ) | |

TO

| Benjamin H. Banta | Brent A. Swanson |
|---|---|
| The Kullman Firm, P.L.C. | Heyl, Royster, Voelker & Allen |
| 1100 Poydras Street, Suite 1600 | 120 W. State Street, 2nd Floor, |
| New Orleans, LA 70163 | Rockford, IL 61105 |
| By ECF | By ECF |

## NOTICE OF FILING

Please take notice that the Plaintiff has filed a brief in response to the Defendant's motion for summary judgment with the clerk of the court on October 28, 2009, copies of which are attached and served upon you.

## CERTIFICATE OF SERVICE

Matthew M. Litvak, an attorney, certifies that copies of the foregoing were served upon the above named persons pursuant to ECF on October 28, 2009.

/S/Matthew M. Litvak
Matthew M. Litvak, Esq.
155 N. Harbor Drive
Suite 4301
Chicago, IL 60601-7324
3312-337-8131
FAX 240-0405
Atty #6208529

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA WELLS | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | 08 CV 50241 |
| | ) | |
| AFFILIATED COMPUTER SERVICES, INC., | ) ) | |
| | ) | |
| DEFENDANT | ) | |

**PLAINTIFF'S BRIEF IN REPLY
TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction and Statement of Facts**

The Plaintiff, Barbara Wells' ("Wells), ERISA claim against the Defendant, Affiliated Computer Services ("ACS"), is based on an alleged failure by ACS to give Wells proper notice of her right to continue coverage under COBRA after a qualifying event; ACS's termination of her then-husband's employment.

ACS's summary judgment motion addresses only the issue of its affirmative defense; whether Wells waived the claim that is the subject of this suit in a settlement agreement that resolved a discrimination claim against her former employer, Primax; ACS is the successor to Primax

The Plaintiff, Barbara Wells was employed by Primax from November 2004 thru March 31, 2005.  (SOF ¶ 1)  Though Primax offered Wells a health insurance plan and a 401k plan, she participated in neither. (SOF ¶ 2)  While employed by Primax, Barbara Wells was married to Ronald Wells, who was employed by the Defendant, ACS from 1999 until June 2007.  (SOF ¶ 3, 4)  While employed by ACS, Ronald Wells was enrolled in ACS's health insurance plan. (SOF ¶ 7)  From February of 2000 until he was terminated in of June, 2007, Barbara Wells was a beneficiary of the health insurance plan that ACS provided to Ronald Wells.  (SOF ¶ 6)

2

During 2005, Barbara Wells filed a complaint with the EEOC against Primax alleging discrimination under the Age Discrimination in Employment Act. . (Def. Ex.1A, ¶6)  On January 22, 2008, Barbara Wells and Primax's successor, ACS entered into a General Release in which they agreed to settle Wells' claims arising out of her ADEA complaint and her employment with Primax.  (Def. Ex.1A, ¶6)  The General Release provided that she would receive $4,000 in exchange for releasing her claims for discrimination, wages and ERISA benefits arising out of her employment.  ACS argues, incorrectly, that this General Release related to her employment also released her rights as a beneficiary to her then-husband's health insurance plan, provided by ACS.

## II.     Standard for Summary Judgment

The standard for granting or denying a motion for summary judgment as stated by the Defendant is correct.

However, because ACS raises the General Release as an affirmative defense, ACS bears the burden of conclusively establishing its affirmative defense to a claim for relief under ERISA.  <u>Abrams v. Van Kampen Funds, Inc.</u>, 2004 U.S. Dist. LEXIS 11730 (N.D. Ill. June 24, 2004).

## III.    Issue Presented.

Whether the General Release which arose from Wells' EEOC complaint against Primax, released her claim to coverage as a beneficiary under a health plan provided to her then husband by ACS; Primax's successor.

## IV.    Applicable Law.

ACS's motion for summary judgment on its affirmative defense is directed only at the scope of the General Release and whether it included Wells' rights as a beneficiary to her then-husband's health insurance plan as well as all of the rights and claims arising out of her employment dispute with Primax; the subject of the General Release was the discrimination claim.  ACS's motion does not address the merits of Wells' ERISA claim itself.

Whether a settlement agreement included a claim involving a federal statutory right is to be interpreted by state law. Holmes v. Potter, 552 F.3d 536, 539 (7th Cir. 2008) ("settlement of a federal claim is enforced 'just like any other contract' under the state law of contract.")  The General Release contained a choice of law provision that identified Illinois as the law to be applied in its interpretation. (Def. Ex.1A, ¶ 6)

ACS devotes a substantial part of its brief to several issues which are not issues:

1. Can ERISA rights be waived; they clearly can.
2. Did Wells make a knowing and voluntary waiver of her rights and claims arising out of her employment dispute with Primax; she clearly did.

Because the question is whether a right, unrelated to Wells' employment, was within the scope of the General Release that resolved Wells' employment discrimination claim against Primax, the issue is one of intent of the parties. The issue of the parties' intent is resolved by Illinois and Federal law thru an examination of the subject and context of the release and the language used to release a statutory claim.

Only where **both** parties were aware of an additional claim when the release was signed, have courts given effect to the general release language of the agreement to release that claim as well. Farm Credit Bank v. Whitlock,144 Ill.2d 440, 448, 581 N.E.2d 664, 667 (1991). ACS has produced no evidence indicating that it was aware of Wells' ERISA claim.

Where a release contains words of general release in addition to recitals of specific claims, the words of general release are limited to those claims which arise from the incident that is the subject of the release. Carona v. Illinois C. G. R. Co., 203 Ill. App. 3d 947, 951, 561 N.E.2d 239, 242 (5th Dist. 1990). The only subject of the General Release was the resolution of Wells' ADEA claim arising out of her employment with Primax, not her ERISA rights obtained thru her husband's employment with ACS.

"Where an important statutory right is at issue, an explicit manifestation of intent is required before the right in question can be deemed waived" and requires the release to specifically identify what right is being waived. Gallagher v. Lenart, 226 Ill. 2d 208, 237, 874 N.E.2d 43, 62. (2007). To waive a right under ERISA, the interest surrendered must be described in order to ensure that it reflects a  purposeful relinquishment by the

4

employee. Craig v. Smith, LEXIS 5727, 20-21 (S.D. Ind. Jan. 2009).

**V.      Where an Injury Is Specified in a General Release, Only Those Claims Which Both Parties Know of and Are Related to the Injury Are Waived.**

ACS fails to demonstrate that either party was aware of her ERISA claim for failure to give statutory notice to continue COBRA coverage or that this claim arose from the injury that was the subject of the General Release.

The General Release entered into by Wells and Primax specifically addressed her EEOC complaint, dealt with her claims for damages, wages and ERISA benefits arising out her employment and was not a waiver of her rights as a beneficiary to a health insurance plan provided to her husband by ACS.

> "Employee hereby irrevocably and unconditionally releases, acquits and forever discharges . . . Primax . . . from. . ., (a) **all Claims of Age Discrimination under the Age Discrimination in Employment Act of 1967 or any similar state statute;** (b) all Claims under the Employee Retirement Income Security Act of 1974; . . ." (Bold text in original)

> "Employee agrees to dismiss or withdraw any administrative claim she has filed related to her employment with the Primax or the Company, including Charge Number 210-2005-05310 filed with the EEOC." (Release, ¶ 3)

The General Release specifically identifies the complaint for discrimination and addresses every aspect of Wells' employment with Primax and claims that would naturally arise from it, such as the right to:

> (1) Continue any administrative action including the existing charge filed with the EEOC against Primax, (2) Continue or initiate any judicial action concerning this Claim, (3) Sue under the ADEA for employer misconduct, (4) Claims under ERISA, (5) Make claims of discrimination, (6) Make claims of wrongful discharge and (7) Make claims related to her employment with Primax, including wages and benefits or other compensation. (Release, ¶ 3)

This court might ask why were claims under ERISA mentioned if she was not a participant in a health insurance or 401k plan provided by Primax. One of the cases cited by ACS, Isbell v. Allstate Ins. Co., 2003 U.S. Dist. LEXIS 21412 (S.D. Ill. Nov. 25,

5

2003), explains that because the General Release was intended to settle an ADEA claim it had to contain a clause concerning her ERISA rights from her employment.

A.  **ACS must Demonstrate That it Knew of Wells' Erisa Claim as a Beneficiary of Her Then-husband's Health Insurance Plan at the Time the Release Was Executed.**

The ERISA rights that form the basis of Wells' suit arose out her marriage to her then-husband who was an employee of ACS and the Act specifically defines her rights as a spouse as being separate from that of a covered employee.

> "(3) Qualified beneficiary.(A) In general. The term "qualified beneficiary" means, with respect to a covered employee under a group health plan, any other individual who, on the day before the qualifying event for that employee, is a beneficiary under the plan(i) as the spouse of the covered employee." 29 USCS § 1167

"Where **both** parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well. Farm Credit Bank v. Whitlock, 144 Ill. 2d at 448; Gallagher v. Lenart, 226 Ill. 2d at 237. (Emphasis added) For a general waiver to be effective, a claim unrelated to the subject of the release must be know by both parties.

Emphasis is added for the reason that ACS has not provided this court with one fact that would indicate that ACS was aware, at the time the General Release was entered into, that Wells had made or was about to make a claim for denial of benefits under COBRA as a beneficiary of her former husband's health insurance plan. In fact ACS denies that it ever received any notices from Wells concerning her divorce and request for continuing coverage under COBRA. More importantly, ACS has not demonstrated that even Wells knew she had a claim at the time the General Release was executed.

All the General Release recites is a waiver of rights under ERISA, but ERISA encompasses more than just health care plans and the General Release fails to identify what ERISA claim was being waived; Wells' right to health care benefits or a 401K plan

6

arising out of her employment or her rights as a beneficiary to her then-husband's health insurance plan.

The General Release evinces no intent that the parties knew that Wells had a potential ERISA claim arising from her ex-husbands health insurance plan and does not recite or express the existence of a specific right that was being waived.

**B.      Where a General Release Specifically References an Injury as its Basis, Only Those Claims That Arise from the Injury Are Waived by the Release.**

Because the General Release specifically mentions Wells' EEOC complaint against Primax, the parties intent to resolve claims, thru a general release, can only extend to those claims which would be naturally related to the subject of the dispute.

"Where there are words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made." Carlile v. Snap-On Tools, 271 Ill. App. 3d 833, 839, 648 N.E.2d 317, 332  (4th Dist. 1995). "Where there are only words of general release, the courts will restrict the release to the thing or things intended to be released and will refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." Id.  Doctor's Assocs. v. Duree, 319 Ill. App. 3d 1032, 1046, 745 N.E.2d 1270, 1282  (1st Dist. 2001). "Where a release contains words of general release in addition to recitals of specific claims, the words of general release are limited to those claims which arise from the incident that is the subject of the release." Carona v. Illinois C. G. R. Co., 203 Ill. App. 3d 947, 951, 561 N.E.2d 239, 242 (5th Dist. 1990).  Where the parties have referenced a specific incident and the claims that arise out of it, it is their intent to limit a general release to those claims that arise out of the incident.  Id.

The General Release specifically referenced the origin of Wells' dispute with Primax, the filing of a charge with the EEOC against Primax for violating the ADEA.

> "Employee hereby irrevocably and unconditionally releases, acquits and forever discharges . . . Primax . . .  from. . ., (a) **all Claims of Age Discrimination under the Age Discrimination in Employment Act of 1967 or any similar state statute;**   (Bold text in original)

> "Employee agrees to dismiss or withdraw any administrative claim she has filed related to her employment with the Primax or the Company, including Charge Number 210-2005-05310 filed with the EEOC." (Release, ¶ 3)

Because ERISA encompasses many different types of employer provided benefits, including retirement and health care, it is obvious that as part of Wells' separation and the resolution of her EEOC complaint, ACS wanted to eliminate all claims that could have arisen from her employment in disposing of the case.

*Carona* is the most factually instructive case on this issue because it involved two separate injuries, the second of which occurred prior to the execution of a general release for the claims arising out of the first injury.

> The plaintiff in *Carona* sustained a work injury on July 29, 1983, sustained a second unrelated work injury on February 22, 1986, signed a general release with the defendant on August 14, 1986, that referenced the July 29, 1983 injury and then filed suit on December 19, 1986 against the same defendant for the February 22, 1986 work injury. *Id.* at 950. The release made no mention of the second injury.

The general release the plaintiff in *Carona* signed provided:

> "[employee] hereby release, acquit, and forever discharge the employer . . . from any and all claims, demands, suits, actions, causes of action, and damages whatsoever, which I now have or may in the future have against them, or any of them, in consequence, directly or indirectly, of any matter or thing done or suffered to be done by any of them prior to and including the date hereof, and more particularly on account of an injury/accident/incident that occurred while in the employ of the [employer]. . . . or about the 29th day of July 1983." *Id.* at 950.

The court in *Carona* held that the claims arising out of the second injury which pre-dated the general release were not included within the release despite the presence of the general release language (release, the employer . . . from any and all claims, which I now have or may in the future have against them, . . . of any matter or thing done or suffered to be done by any of them prior to and including the date hereof) for the reason that the subsequent claim did not arise out of the first event that was the subject of the general release. *Id.* at 951. This is because where reference is made to a

8

specific event, the parties intended to only release those claims that arose out of the referenced event or injury, even though the release contains words of a general release. *Id.* at 951.

The General Release signed by Wells makes specific reference to the charge she made to the EEOC and contains identical language of a genera release:

> "Employee hereby irrevocably and unconditionally releases, acquits and forever discharges . . . Primax . . . from any and all, . . .(a) **all Claims of Age Discrimination under the Age Discrimination in Employment Act of 1967 or any similar state statute;** (b) all Claims under the Employee Retirement Income Security Act of 1974; (c) all employment or discrimination Claims under the statutes of the State of Illinois or any other state; (d) all Claims of unlawful discrimination based on age, sex, race, religion, national origin, handicap, disability, equal pay or any other basis; (e) all Claims of wrongful discharge, retaliation, . . ." (Bold text appears original)

> "Employee agrees to dismiss or withdraw any administrative claim she has filed related to her employment with the Primax or the Company, including Charge Number 210-2005-05310 filed with the EEOC." (Release, ¶ 3)

The only reason that the General Release mentions "Claims under the Employee Retirement Income Security Act of 1974;" is because it was required to since it was a settlement of and ADEA claim. <u>Isbell v. Allstate Ins. Co.</u>, 2003 U.S. Dist. LEXIS 21412 (S.D. Ill. Nov. 25, 2003). Not for the illogical reason that she might have had a claim arising out a completely different illegal act involving her then-husband's employer.

Absent Wells' employment with Primax, the existence of an ADEA claim, the desire to resolve it and the parties decision to resolve it, there was no existing controversy at issue or threatened that would have prompted the parties to enter into the General Release or any release. Now ACS as Primax's successor wants this court to believe that somewhere on the far side of the minds of each party, though never expressed or recited, was the following thought:

> 'you know what, as long as we're here settling all the potential claims you could make arising from your employment with Primax, lets resolve your potential ERISA claim that arose out of your rights as a beneficiary to another ACS employee's health insurance plan that you haven't even

9

notified us about.'

The only intention was to resolve claims related to the ADEA complaint.

## VI. Because the Release Signed by Wells Did Not Specifically Address the ERISA Benefits at Issue the Waiver Is Unenforceable.

Both Illinois law and the 7th Circuit require that a release containing a waiver for statutory rights (Illinois) or ERISA rights must specifically identify the right being waived. ERISA encompasses rights to health insurance and 401k plans. Wells opted not to be included in either type of plan thru her employment with Primax.

The subject and purpose the "General Release" was to resolve Wells EEOC claim against Primax, and specifically highlights her ADEA claim and references her EEOC complaint: (Def. Ex.1A, ¶6)

> "Employee hereby irrevocably and unconditionally releases . . . Primax . . . from any and all charges, complaints, . . . Employee at any time previously had, . . . including, but not limited to, (a) **all Claims of Age Discrimination under the Age Discrimination in Employment Act of 1967 or any similar state statute;** (b) all Claims under the Employee Retirement Income Security Act of 1974; (Bold text original)

> "Employee agrees to dismiss or withdraw any administrative claim she has filed related to her employment with the Primax or the Company, including Charge Number 210-2005-05310 filed with the EEOC." (Release, ¶ 3)

The General Release clearly dealt with her employment with Primax, it discussed her EEOC claim and her rights to make claims for unlawful conduct. While ACS sought to ensure that it was going to be released from any claims for wages and benefits, arising out the ADEA action, it lacked the ability to identify specific ERISA claims because Wells was not a participant in any plan. Nonetheless, the inclusion of the general language waiving ERISA claims was required (<u>Isbell v. Allstate Ins. Co.</u>, 2003 U.S. Dist. LEXIS 21412 (S.D. Ill. Nov. 25, 2003), which explains its presence, but does not excuse the absence of words identifying the right being waived.

In discerning the parties intent, Illinois law adds an additional requirement where a statutory right is being waived. "Where an important statutory right is at issue, an

10

explicit manifestation of intent is required before the right in question can be deemed waived" and requires the release to specifically identify what right is being waived. Gallagher, 226 Ill. 2d at 239, 874 N.E.2d at 62.

The rule adopted by the 7th Circuit in determining whether the parties to a general release intended to waive rights under ERISA regulated is as follows:

> "[R]equires proof of a specific termination of the rights in question in order to effectively waive a beneficiary's interest under an ERISA-regulated plan. "Another formulation of this principal mandates that an attempted waiver by a designated beneficiary of an ERISA-regulated benefits plan be "explicit, . . . to be considered valid. Essentially, when we are evaluating whether the wavier is effective in a given case, we are more concerned with whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question. Melton v. Melton, 324 F.3d 941, 945-946 (7th Cir. 2003). (The court must "scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights.").

At least three district courts in this Circuit in applying *Melton* have held that the absence of language in a general release which identifies the ERISA property interest being waived did not effectively waive the interest.

"[A] court must concern itself more with whether a reasonable person would have understood that she **was waiving her expectancy interest in the proceeds or benefits in question** rather than with any 'magic language' contained in the waiver itself." *Fox v. Special Agents Mut. Benefit Ass'n*, 2006 U.S. Dist. LEXIS 74487 (S.D. Ind. Sept. 19, 2006) (General release that didn't identify a life insurance policy was not a valid waiver of ERISA benefits)

"To waive rights under ERISA, a plan participant must do so knowingly" and that the court must "scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights." Craig v. Smith, LEXIS 5727, 20-21, 22 (S.D. Ind. 2009). (A waiver which did not explicitly describe the property interest, a note payable over five years, was not an effective waiver.)

The proper inquiry is whether the beneficiary waived their interest in the rights at issue or signed a release whose scope is ambiguous. West v. Ill. State Bd. of Educ., 2007 U.S. Dist. LEXIS 85716 (N.D. Ill. Nov. 20, 2007). Because of the important

11

statutory goals of ERISA, if the court cannot conclude that the waiver specifically identified and described the property interest so that the employee knew what they were waiving, then there is was not a waiver of those rights. *Id.*

These three cases make clear that there must be a purposeful waiver of specific rights that are identified and described in the agreement in order to effectively waive ERISA benefits.

Wells signed a "General Release" with her employer, Primax, for wages, rights and benefits that arose out of her employment. The "General Release" says nothing about her benefits as the spouse of a covered employee and is therefore ambiguous because its scope is not defined.

This is not a careless selection of language used to fill blank space on a paper to create an opinion. It is a careful selection of words the import of which is that the waiver must identify the interest being waived so that the person who signed the waiver understands what rights and benefits they are bargaining away.

The "General Release" made no mention of or reference to Wells' rights and benefits under the terms of the health insurance plan provided to her then-husband as an employee of ACS.

ASC's motion for summary judgment should be denied.

## VII. ACS Is Not Entitled to Fees Because Wells' Claim Is Meritorious.

The 7th Circuit test for awarding attorney's fees to a prevailing defendant in an ERISA action is whether "the plaintiff's position was both "substantially justified"--meaning something more than non-frivolous, but something less than meritorious--and taken in good faith." Senese v. Chicago Area Int'l Bhd. of Teamsters Pension Fund, 237 F.3d 819, 826 (7th Cir. 2001).

In this case the Plaintiff's position is hardly frivolous. Her claim for benefits arose out of her status as a beneficiary under a health care plan provided to her husband. ACS responds by pointing to a release whose subject was her employment and the ERISA benefits that she had as a plan participant in her employer's health benefits plan. The release does not mention her rights or benefits under her husband's plan. As the

cases that Plaintiff has cited make clear, any waiver must specifically identify the right or benefit that is being released. The release Wells signed dealt with her employment and mentions her ERISA benefits arising out of that employment.

Moreover, the Defendant has not cited any cases that go beyond a generalization of the effect of a general release and which address a specific situation analogous to the instant case. In other words, the contours of what ACS claims the law should be to the instant factual situation is not so clearly defined as to tell Wells that her position is less than meritorious.

The Defendant's request for fees should be denied.

**VII.  Wells Did Not Violate the Terms of the "General Release" by Seeking to Enforce Her Rights as a Beneficiary under Her Husband's Health Care Plan.**

As argued above, because the ERISA right was not defined or described the General Release it was not included within the scope of the General Release. Any suit to enforce a right that was not included within the scope of the General Release is not a violation of that agreement.

The Defendant's motion for summary judgment on its counter-claim should be denied.

**IX.  Cases Cited by the Defendant.**

Pierce v. Atchison, T. & S.F. Ry., 65 F.3d 562, 568 (7th Cir. Ill. 1995) (Employee sought to exempt a discrimination claims from a general release concerning his employment and his release of any and all claims arising out of his employment) *Carona* and the other cases explain that a claim that is related to the injury is included within a general release making this case factually unrelated to Wells' case.

Licciardi v. Kropp Forge Div. Employees' Retirement Plan, 990 F.2d 979, 983 (7th Cir. Ill. 1993) (Employee sought to exempt the release of his rights to pension contributions from a lump sum settlement arising out of a dispute concerning his

continued employment). Aside from the fact that it is a 1993 case and contradicted by *Melton,* the release was directly related to the Plaintiff's settlement of his employment claim.

Fair v. International Flavors & Fragrances, Inc., 905 F.2d 1114, 1116 (7th Cir. Ill. 1990) (Employee sought to exempt the release of her rights to pension contributions from a lump sum settlement arising out of a dispute concerning her continued employment) Aside from the fact that it is a 1990 case and contradicted by *Melton,* the release was directly related to the Plaintiff's settlement of her discrimination claim.

Howell v. Motorola, Inc., 2005 U.S. Dist. LEXIS 22137 (N.D. Ill. Sept. 30, 2005)(Court determined that employees can waive their own rights under ERISA, which by the way is not an issue)

Isbell v. Allstate Ins. Co., 2003 U.S. Dist. LEXIS 21412 (S.D. Ill. Nov. 25, 2003) (Dealt with the required contents of a waiver for claims arising out of the ADEA)

Mahaffey v. Amoco Corp., 1997 U.S. Dist. LEXIS 680 (N.D. Ill. Jan. 16, 1997) (There is no apparent reason why this case was cited since it does not even discuss the applicability of a release or waiver to a cause of action)

Actually, one of the cases that ACS cites is instructive, Renaldi v. Sears Roebuck & Co., LEXIS 3536 (N.D. Ill. 2001). The employee had signed a general release as part of an early retirement program and later sued under ERISA. Aside from the fact that this case is contradicted by *Melton,* the court analyzed the general release from the standpoint of ambiguity and found that: "The Agreement clearly releases Sears and its employees from all liability, claims for relief, and causes of action arising from or connected with **Renaldi's employment at Sears**." *Id. (*Emphasis added) As is discussed further in Section V of the Plaintiff's Brief, a general release, waives only those claims that arose out of the dispute. The court in Renaldi pointed out the origin of the dispute (employment) for the reason identified in Whitlock; the intent of the parties is discerned from the dispute that they were trying to resolve thru settlement.

## X.    **Conclusion.**

For the foregoing reasons, the Plaintiff requests that this court deny the Defendant's motion for summary judgment.

14

/s/ Matthew M. Litvak
Matthew M. Litvak, Esq.
155 N. Harbor Drive
Suite 4301
Chicago, IL 60601-7324
312-337-8131
FAX 240-0405
Atty #6208529